**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | |
|---|---|
| LINDA J., | * |
|     Plaintiff, | * |
| v. | *    Civil No. TMD 18-2394 |
| ANDREW M. SAUL,<br>**Commissioner of Social Security,** | * |
|     Defendant.[1] | * |

**MEMORANDUM OPINION GRANTING DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Linda J. seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 14) and Defendant's Motion for Summary Judgment (ECF No. 19).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. He is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

Judgment (ECF No. 19) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

I

**Background**

On April 12, 2017, Administrative Law Judge ("ALJ") Stephanie Nagel held a hearing where Plaintiff and a vocational expert ("VE") testified. R. at 36-87. The ALJ thereafter found on August 30, 2017, that Plaintiff was not disabled from her alleged onset date of disability of February 28, 2013, through the date of the ALJ's decision. R. at 11-35. In so finding, the ALJ found that Plaintiff had the residual functional capacity ("RFC")

> to perform sedentary work as defined in 20 CFR 404.1567(a) except that she is limited to occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching, or crawling; no climbing ladders/ropes/scaffolds; occasionally reaching overhead bilaterally; and frequently handling and fingering bilaterally. She is also limited to a sit/stand option every hour while remaining on task.

R. at 19.[3] In light of this RFC and the VE's testimony, the ALJ found that, although she could not perform her past relevant work as a personnel clerk, recruiter, and data entry clerk, Plaintiff could perform other work in the national economy such as an information clerk, telephone solicitor, or timekeeper. R. at 29-31. The ALJ thus found that Plaintiff was not disabled from February 28, 2013, through August 30, 2017. R. at 31.

After the Appeals Council denied Plaintiff's request for review, Plaintiff filed on August 6, 2018, a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

disposition and entry of judgment. The case then was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

II

**Disability Determinations and Burden of Proof**

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R.

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1522(b)(1)-(6), 416.922(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

§§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

# III

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## IV

### Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[5] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 4-8, ECF No. 14-1. Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work. *Id.* at 6. In particular, she contends that the ALJ "failed to set forth a narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence." *Id.* at 6-7. Plaintiff further argues that the ALJ erroneously relied on the VE's testimony. *Id.* at 3-4. Plaintiff finally argues that the ALJ erroneously evaluated her subjective complaints. *Id.* at 9-11. For the following reasons, Plaintiff's contentions are unavailing.

### A. ALJ's Credibility Determination

The Court turns first to Plaintiff's argument that substantial evidence does not support the ALJ's assessment of her credibility. The ALJ reviewed Plaintiff's testimony in her decision:

> [Plaintiff] testified that she was divorced and living by herself in a two-story home, and she climbed the stairs regularly, which included 6 steps. She reported limited driving due to problems with her reflexes that limited her ability to turn, such that she tried to drive outside of rush hour times. She noted going out 2-3 times a week, which included going to the grocery store or doctor and going to religious services on Sundays. She reported that she had stopped working in February 2013 after being diagnosed with stage two breast cancer and undergoing surgery with 12 weeks of daily radiation. She described left side tenderness and swelling that made it difficult for her to use her left side and hard to concentrate as a result of her cancer treatment. [Plaintiff] also alleged constant

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

> hand swelling with some arm tenderness; she reported problems with reaching, picking up items, or turning fast due to neck and shoulder stiffness; she had hand stiffness and pain with finger numbness, tingling, and swelling that occurred twice weekly in the morning. She further noted problems with grasping and gripping, she had neck pain that went down her back and into her legs, she had back pressure with sitting or standing, and she had neck and shoulder arthritis since 2011. She alleged that she could only sit for 10-15 minutes before needing to stretch her back, and she had peripheral neuropathy in her feet, hands, and fingers that was constant. She noted doing limited household chores, such that her daughter-in-law did most of them, and she could only wash one or two plates, make her bed, and do light work. She admitted that she could shower by herself, though her daughter-in-law helped her with back zippers due to reaching and hand problems. She reported that on a typical day, she would prepare simple meals, watch television, change positions, and read with some limitations due to concentration problems. She noted sitting in a recliner with her feet elevated to help with back pain, she went out once every 1-2 months for fun, she could only walk between a quarter and half a mile at a time, and she had problems climbing stairs due to knee pain[.]

R. at 19-20; *see* R. at 43-70. According to Plaintiff, the ALJ failed to explain which of her statements to believe and which to discredit. Pl.'s Mem. Supp. Mot. Summ. J. 9, ECF No. 14-1 (citing *Mascio v. Colvin*, 780 F.3d 632, 640 (4th Cir. 2015)). Plaintiff contends that the ALJ considered the type of activities that she could perform without also considering the extent to which she could perform them. *Id.* at 10-11 (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). For the reasons discussed below, Plaintiff's arguments are unavailing.

> Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects.

*Lewis v. Berryhill*, 858 F.3d 858, 865-66 (4th Cir. 2017) (citations omitted); *see* 20 C.F.R. § 404.1529(b)-(c).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the above alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. at 26. The ALJ found that Plaintiff "engages in a wide range of daily activities, which shows that her activities are not as limited as alleged." R. at 27.

> For instance, [Plaintiff] reported in March 2013 that she walked 3-4 times weekly for 30-40 minutes and gardened, and she noted at a June 2013 primary care visit that she did moderate exercise for 30 minutes on most days. She reported at her May 2014 oncology visit that she was on the treadmill for 3-4 miles almost daily and was lifting hand weights. Last, in December 2014 and September 2016, [Plaintiff] told her oncologist that she had been having good energy levels with regular exercise. [Plaintiff's] reported exercise shows that she is not as limited as alleged, which was considered in forming the above listed [RFC].

R. at 27-28 (citations omitted); *see* R. at 350-55, 411, 441-42, 590-93, 596-99, 808-09.

Thus, "the ALJ cited [Plaintiff's] daily activities for purposes of the credibility determination and not as examples of the functions [she] could perform for an entire day." *Ladda v. Berryhill*, 749 F. App'x 166, 173 n.4 (4th Cir. 2018). The ALJ "did not equate [Plaintiff's] ability to perform certain activities of daily living with an ability to work full time. Instead, [the ALJ] used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms consistent with the applicable rules . . . ." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Because "the ALJ cited adequate evidence from the record to support [her] conclusion that [Plaintiff's] statements were not entirely credible," Plaintiff's contention that substantial evidence does not support the ALJ's determination of her credibility is without merit. *Ladda*, 749 F. App'x at 171 n.3; *see Johnson*, 434 F.3d at 658 ("The ALJ logically reasoned that the ability to engage in such activities is inconsistent with [the claimant's] statements of excruciating pain and her inability to

9

perform such regular movements like bending, sitting, walking, grasping, or maintaining attention."); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam).

B.   **ALJ's RFC Assessment**

The Court next addresses Plaintiff's contention that the ALJ erred in assessing her RFC. Pl.'s Mem. Supp. Mot. Summ. J. 4-8, ECF No. 14-1. SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio*, 780 F.3d at 636 (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did

not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

Plaintiff first contends that, by failing to set forth a narrative discussion while assessing her RFC, the ALJ did not comply with SSR 96-8p. Pl.'s Mem. Supp. Mot. Summ. J. 6-8, ECF No. 14-1. She also argues that the ALJ failed to set forth a function-by-function analysis of her abilities to perform work-related activities and failed to identify the evidence upon which the ALJ relied to support the ALJ's conclusion. *Id.* at 8. In assessing her RFC, however, the ALJ considered the treatment records, opinion evidence, hearing testimony, and her credibility (R. at 16-29). *See Shinaberry v. Saul*, __ F.3d __, No. 18-2096, 2020 WL 908887, at *6 (4th Cir. Feb. 26, 2020) ("We hold that the ALJ's decision is supported by substantial evidence in the record. The ALJ exhaustively reviewed [the claimant's] testimony, her treatment records, and the evaluations by the SSA physicians. The ALJ generally credited the SSA physicians' opinions that [the claimant] was capable of performing work at the light exertional level, with occasional postural limitations, but found additional physical limitations to be in order based upon [the claimant's] treatment records. . . . We have carefully reviewed the record and the ALJ's findings in this regard, and we are satisfied that the ALJ built 'an accurate and logical bridge from the evidence to [her] conclusion' that [the claimant's] testimony was not fully credible." (alteration in original) (quoting *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017))); *Ladda*, 749 F. App'x at 172 ("[T]he ALJ in this case used evidence from the record to explain his finding that [the claimant] was capable of light work. For example, the ALJ noted that [the claimant] claimed that he could walk for only ten to fifteen minutes at a time and could not lift

ten pounds, but he explained that the other evidence in the record, such as medical records and opinion evidence, did not fully substantiate these claims. The ALJ also explained the relative weight he assigned to the statements made by [the claimant], [the claimant's] treating physician, and the state agency medical consultants. The ALJ provided a sufficiently thorough discussion for us to agree that his conclusion that [the claimant] was limited to light work was supported by substantial evidence."). Plaintiff's contentions in this regard thus are unavailing.

Plaintiff argues, however, that the ALJ failed to explain how she determined that Plaintiff was limited to a sit/stand option every hour (rather than every ten to fifteen minutes) while remaining on task (R. at 19), in light of the VE's testimony that the need to change positions more frequently than every thirty minutes would preclude work (R. at 83). Pl.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 14-1. She points to her testimony that she was only able to sit for ten to fifteen minutes and to stand for ten to fifteen minutes. R. at 57, 60. She, however, "points to no medical evidence in support of this limitation [of a sit/stand option every ten to fifteen minutes], and the ALJ did not err in refusing to fully credit [her] subjective statements regarding her physical limitations." *Shinaberry*, 2020 WL 908887, at *6.

C.  **ALJ's Consideration of VE Testimony**

Plaintiff also maintains that the ALJ erroneously relied on the VE's testimony in determining that she could perform the occupations of information clerk, telephone solicitor, or timekeeper. Pl.'s Mem. Supp. Mot. Summ. J. 3-4, ECF No. 14-1. According to Plaintiff, the VE did not testify that she possessed the additional skills of information gathering and customer service that these jobs require, so she does not have the skills necessary to perform the VE's identified jobs. *Id.* at 4. As Defendant points out, however, the ALJ asked the VE whether there were "any jobs that are so similar to [Plaintiff's] past work that the hypothetical person would

12

need to make very little, if any, vocational adjustments in terms of tools, work processes, work settings or the industry[.]" R. at 80. The VE testified that the skills of "[a]ll of the jobs at sedentary would transfer" and that these jobs were so similar to Plaintiff's past work that there would be very little, if any, vocational adjustments. R. at 80. The VE also testified that her testimony was consistent with the *Dictionary of Occupational Titles* (the "DOT").[6] R. at 80. The ALJ thus noted in her decision:

> The [VE] was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and [RFC] as [Plaintiff], and which require skills acquired in [Plaintiff's] past relevant work but no additional skills. The [VE] responded and testified that representative sedentary occupations such an individual could perform include: an information clerk . . . , a telephone solicitor . . . , or a time keeper . . . . The [VE] also added that these listed occupations required basic computer skills, record keeping, and clerical skills, all of which transferred from [Plaintiff's] past relevant work.

R. at 30-31. The ALJ also determined that the VE's testimony was consistent with the information in the DOT. R. at 31.

In *Hoekstra v. Berryhill*, Civil Action No. 17-863, 2018 WL 4354554 (W.D. Pa. Sept. 12, 2018), the ALJ asked the VE at the administrative hearing whether any skills transferred from the claimant's past skilled work as a licensed practical nurse ("LPN") into the light RFC found by the ALJ. The VE testified that an LPN could do the job of a companion. *Hoekstra*, 2018 WL 4354554, at *3. "The ALJ then asked the VE about any other additional skills required of a companion and the VE said that a companion 'might help an individual transact social or

---

[6] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 404.1566(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

13

business affairs, which I wouldn't consider directly linked with LPN training.'" *Id.* "The ALJ then ask[ed] the VE for a clarification," asking whether there would be a need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. *Id.* In response, the VE did not believe that specific adjustments would be required. *Id.* The ALJ found in her decision that the VE "was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity as the claimant, and which require skills acquired in the claimant's past relevant work but no additional skills." *Id.* "The vocational expert responded and testified that representative occupations such an individual could perform include the following: Companion, DOT 309.667-010, 250[,]000 jobs nationally and 2,500 jobs regionally." *Id.* The court in *Hoekstra* found that the ALJ's decision accurately represented the VE's testimony. *Id.* The ALJ ultimately found that substantial evidence supported the ALJ's determination that the claimant was not disabled in light of her age, education, and transferable work skills. *Id.* at *4.

Like in *Hoekstra*, the VE here testified about additional skills required by certain other jobs to which Plaintiff's skills transferred but also testified that these jobs were so similar to Plaintiff's past work that there would be very little, if any, vocational adjustments (R. at 79-80). *See id.* at *3; *see also* 20 C.F.R. § 404.1568(d)(4) ("If you are of advanced age and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry."). Plaintiff thus argues to no avail that substantial evidence does not support the ALJ's analysis at step five because the VE did not testify whether she possessed additional skills in information gathering

14

and customer service required by the occupations of information clerk, telephone solicitor, and timekeeper. *See Hoekstra*, 2018 WL 4354554, at *2-3 (rejecting claimant's argument that, in determining her transferable skills, ALJ failed to address issue of whether the available job to which skills transferred used skills Plaintiff had and no others).

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

**V**

**<u>Conclusion</u>**

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 19) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**. The Commissioner's final decision is **AFFIRMED**. A separate order will issue.

Date: March 17, 2020  /s/
Thomas M. DiGirolamo
United States Magistrate Judge